### In re H. L. HERBERT & CO.

### GOULD et al. v. PERINE.

(Circuit Court of Appeals, Second Circuit. January 14, 1920.)

#### No. 99.

1. BANKRUPTCY ⬅140(3)—ILLEGAL CLAUSES IN AGENCY CONTRACT DO NOT PRECLUDE PRINCIPAL FROM RECOVERING PROPERTY FROM AGENT'S TRUSTEE.

   Where coal was delivered to an agent under a contract between the principal and the seller, the fact that a subsequent contract between the principal and agent, defining terms of agency, contained illegal provisions for control of the agent, does not preclude recovery by the principal of the coal and proceeds of sale thereof from the agent's trustee in bankruptcy.

2. BANKRUPTCY ⬅440—APPEAL PROPER TO REVIEW ORDER DENYING RECOVERY OF PROPERTY FROM AGENT'S TRUSTEE; "CONTROVERSY ARISING IN BANKRUPTCY PROCEEDING."

   A petition to reclaim property from the trustee in bankruptcy of petitioner's agent presents a "controversy arising in a bankruptcy proceed-

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ing," within Bankruptcy Act, § 24a (Comp. St. § 9608), and the proper remedy for review is by appeal, not by petition to revise.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Controversy Arising in Bankruptcy Proceedings.]

Petition to Revise Order of the District Court of the United States for the Southern District of New York.

Involuntary proceedings in bankruptcy against H. L. Herbert & Co. On reclamation petition by George J. Gould and others against Edwin T. Perine, trustee, to recover property in the trustee's possession claimed by petitioners. On a petition to review the referee's finding, order for delivery of the property to petitioner was entered, and the trustee appeals, and files petition for revision. Order affirmed.

Frank M. Patterson, of New York City (D. C. Mellen, of New York City, of counsel), for petitioners.

Taylor, Knowles & Hack, of New York City (R. B. Knowles, of New York City, of counsel), for respondent.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge. July 14, 1914, George J. Gould, Henry M. Earle, Alexander R. Peacock, and Louis B. Rolston entered into an agreement with the firm of Dickson & Eddy, whereby Dickson & Eddy were to sell coal upon the order of and to be delivered to H. L. Herbert & Co., Incorporated, as agents of Gould and his associates, up to the value of $100,000.

September 16, 1914, George J. Gould, Alexander R. Peacock, Louis B. Rolston, William H. Rolston, and Henry M. Earle entered into an agreement with Herbert & Co., a corporation of the state of New York, that all coal received by Herbert & Co. from Dickson & Eddy under the agreement of July 14, 1914, was to be and remain the property of Gould and his associates, and to be sold and the proceeds of sale to be collected by Herbert & Co. as agents, and applied to the payment of Dickson & Eddy, a separate agency account to be kept of the purchase and sale of the coal in their books, the sums to be deducted for fixed charges and for commissions to be determined by Gould and his associates.

It will be seen that the first agreement fixes the title to the coal and that the second agreement fixes the details of the agency. The last two clauses of the agreement of September 16, 1914, were as follows:

"Whilst the said parties of the second part are under any liability under this or any other agreement entered into by them at the request or instance of the Herbert Company, the management of the company shall be conducted by them or their nominees, and all officers and directors shall be chosen by them.

"H. L. Herbert shall be president, Carl H. Randebrock vice president, and the secretary and treasurer shall be chosen by the parties of the second part; his term of office to be at the discretion of the directors or their nominees. The said parties of the second part or their nominees shall be directors, and pending this agreement no changes shall be made in relation to the officers in salaries, or in the policies of the company, without the consent of the said parties of the second part."

December 14, 1915, Henry M. Earle gave 60 days' notice of withdrawal as provided in the contract of July 14, 1914, to Dickson & Eddy, and also Herbert & Co., and one Edwin M. Hooley took his place.

In pursuance of the agreement of September 16, 1914, the petitioners caused to be advanced to Herbert & Co. by the New York Trust Company $25,000, three of them agreeing to pay one-fifth each and one agreeing to pay two-fifths of moneys advanced to that amount, which moneys were paid to and received by Herbert & Co., agents, and deposited in a special account in the New York Trust Company with them as agents, and used for the payment of coal received by them as agents from Dickson & Eddy. This advance of $25,000 was for the purpose of enabling them to pay Dickson & Eddy's monthly bills in case they had not collected enough from their customers to do so.

September 27, 1916, a petition in involuntary bankruptcy was filed against Herbert & Co., and it was adjudicated a bankrupt September 29th. July 30, 1917, George J. Gould, Louis B. Rolston, William H. Rolston, Alexander R. Peacock, and Henry M. Earle filed a reclamation petition, praying that the trustee in bankruptcy be required to deliver to them certain coal, cash, and accounts in his possession which were derived from the petitioners' coal received by Herbert & Co., agents, from Dickson & Eddy under the agreement of July 14, 1914, and received and sold by them as agents under the agreement of September 16, 1914.

The trustee answered the petition, setting up as a defense, first, that the agreement of September 16, 1914, was contrary to public policy and void, because of the provisions contained in the last two clauses; and, second, that the withdrawal of Henry M. Earle from the contract terminated them as of the date of February 12, 1916.

The referee found as a fact that the property sought to be reclaimed was the property of the petitioners, and not of the bankrupt, but he sustained the first defense, that the provision in the contract of September 16, 1914, for petitioners' control of the corporation made the contract void. Without going into detail, the statutes of New York require the directors of corporations to be elected by the stockholders.

As to the second defense he held that the withdrawal of Earle terminated the contracts as of February 12, 1916, but that, as the remaining parties concerned continued to do business together in exactly the same way, their respective rights and obligations continued to be the same.

Upon petition to review, Augustus N. Hand, J., sustained the referee's finding of fact that the petitioners were owners of the property sought to be reclaimed, but reversed his finding of law that they could not recover because of the illegal provisions in the contract of September 16, 1914, as to their control of the corporation. We agree with both conclusions.

[1] The petitioners' title to the coal depends upon their contract with Dickson & Eddy, which is open to no objection. The contract

263 F.—23

between them and Herbert & Co. merely defines the terms of the agency, and is material only as evidence that the particular property reclaimed in the hands of the trustee belongs to the petitioners and never was the bankrupt's.

The bankruptcy has terminated the agency contract as of September 27, 1916, the day the bankruptcy proceedings were instituted. The petitioners are not seeking to enforce it. If they were asking for damages for breach of it, the question of the illegality of the provisions giving them control of the corporation might be raised, and also whether these provisions were not severable from the other unobjectionable provisions of the contract. What the petitioners have proved is their right to any coal the bankrupt has received under their contract with Dickson & Eddy, and the proceeds of any such coal it may have sold, and the balance in the special agency account in the New York Trust Company which the petitioners have guaranteed. We see no occasion whatever for arriving at the inequitable conclusion that property which clearly belongs to these petitioners should be applied to the payment of the bankrupt's creditors.

[2] The question of practice remains. Both a petition to revise and appeal have been filed. As the order sought to be revised was entered July 2, 1919, and the petition to revise filed August 19, 1919, it was too late. However, we think a petition to revise was not the proper remedy. The controversy is one arising in a bankruptcy proceeding under Bankruptcy Act, § 24a (Comp. St. § 9608), and the proper remedy is by appeal. Gibbons v. Goldsmith, 222 Fed. 826, 138 C. C. A. 252.

The order is affirmed.